# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GLOBE METALLURGICAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RIMA INDUSTRIAL S.A., *et al.*, | ) |
| | ) |
| Defendants. | ) |

No. 14-cv-1252 (KBJ)

## MEMORANDUM OPINION

Plaintiff Globe Metallurgical Inc. ("Globe"), a corporation based in Beverly, Ohio, is the leading domestic manufacturer of silicon metal and silicon-based ferroalloys. (*See* Am. Compl., ECF No. 16, ¶ 14.) Defendant Rima Industrial S.A. ("Rima") is a rival silicon metal manufacturer based in Brazil. (*See id.* ¶ 3.) Neither party is based in the District of Columbia or conducts any business here. Nevertheless, Globe has brought the instant action against Rima and its purported co-conspirators, claiming that these out-of-state defendants have committed RICO violations, tortious interference, civil conspiracy, and unjust enrichment. The crux of Globe's complaint is the contention that, approximately 15 years ago, Rima acted in concert with its co-defendants to lie to the Commerce Department in order to get certain duties on imported silicon metal revoked, which allowed Rima to export its product to the U.S. market without the burden of the previous tariffs, thereby costing Globe both sales and customers.

Before this Court at present is Defendants' motion to dismiss.  (*See* Defs.' Mot. to Dismiss, ECF No. 17.)  Defendants make three arguments for dismissal: first, that this Court lacks personal jurisdiction over the Defendants; second, that Plaintiff's claims are untimely; and third, that Plaintiff's complaint fails to state a claim upon which relief can be granted.  For the reasons explained below, this Court finds that it need go no further than Defendants' first contention.  It is undisputed that the sole contact that Defendants have had with the District of Columbia is Rima's interaction with the Commerce Department regarding the antidumping order, and under D.C. law, the assertion of personal jurisdiction cannot be based on such contacts.  Furthermore, although D.C. courts have recognized a narrow "fraud exception" to this government contacts doctrine, that exception does not apply here because Globe does not allege that Defendants fraudulently induced unwarranted government action *against it*, and Globe's other arguments for personal jurisdiction are unavailing.  Consequently, and as set forth in the accompanying order, Defendant's motion will be **GRANTED**.

## I.     BACKGROUND

Silicon metal is produced by combining quartzite, carbon, and a bulking agent such as woodchips, and the resulting solid is used both to create aluminum and to create the organic chemicals known as silicones.  (Am. Compl. ¶¶ 16–17.)  Because silicon metal is an interchangeable commodity product, competition among its suppliers is intense and price-sensitive.  (*See id.* ¶¶ 17, 18, 20.)  The United States is one of the largest markets for silicon metal, and domestic producers have often faced "dumping" by foreign producers—a practice in which those producers sell silicon metal in the domestic market at "unfairly low prices."  (*See id.* ¶¶ 22.)

According to the allegations in Globe's Amended Complaint, which the Court must accept as true at this stage, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the U.S. Commerce Department determined in 1990 and 1991 that various Brazilian silicon metal producers, including Defendant Rima, had been engaged in dumping silicon metal in the United States.  (*See* Am. Compl. ¶ 27.)  As a result, the Commerce Department issued an order in 1991 that imposed antidumping duties on imports from various Brazilian silicon metal producers, including Rima.  (*See id.*)  Under Commerce Department regulations, an affected entity can request that the Commerce Department reconsider an antidumping order that it has issued, and between 1993 and 2002, Rima repeatedly requested administrative review of the antidumping order that had been issued against it, seeking to have the order lifted (*see id.* ¶ 30).

According to Globe, the Commerce Department's review of a request that it lift an antidumping order involves, among other things, consideration of any costs incurred by a U.S. affiliate of the company that is subject to the order.  (*See id.* ¶ 32.)[1]  The Department's review turns in part on the difference between the price the company charges for its product in its home market and the price it charges as an export in the United States.  In calculating that price differential (also known as the "dumping margin"), the Department subtracts from the export price any costs that a U.S.-based affiliate incurred in selling the company's product in the U.S. market; thus, if

---

[1] Under applicable law, the term "affiliated persons" includes "[a]ny person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization."  19 U.S.C. § 1677(33)(E).  A person is considered "to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person."  *Id.* § 1677(33).

undisclosed affiliate costs go unconsidered, the dumping margin will be inaccurately small, which could affect the outcome of the Department's review.  (*See id.* ¶ 33)

In the instant complaint, Globe alleges that Rima hatched a scheme to lie to the Commerce Department as part of its effort to persuade the agency to lift the 1991 antidumping order: Rima planned to conceal its affiliation with U.S.-based silicon metal distributor Defendant Polymet Alloys, Inc., an Alabama company, and thereby to mislead the Commerce Department into miscalculating the applicable dumping margin. (*See id.* ¶ 33.)[2]  Rima allegedly carried out this scheme over a period of years in conjunction with its repeated requests for the Commerce Department to reconsider the 1991 antidumping order; according to the complaint, Rima falsely told the Commerce Department that it had no U.S. affiliate relationships on multiple occasions.  (*See* Am. Compl. ¶ 36 (alleging that Rima repeatedly stated: "RIMA INDUSTRIAL S/A does not have affiliated companies in the United States[.]").)  Globe maintains that, as a result of this intentional misrepresentation, the costs that Polymet incurred in selling Rima's silicon metal were improperly excluded from the agency's analysis during its review of the antidumping order, and the Commerce Department ultimately (mistakenly) revoked the antidumping order with respect to Rima on December 17, 2002.  (*See id.*; *see also* Silicon Metal from Brazil: Final Results of Antidumping Duty Administrative Review and Revocation of Order in Part, 67 Fed. Reg. 77,225 (December 17, 2002).)

Rima's return to unfettered exporting of silicon metal into the U.S. market was bad news for Globe, which was one of only three domestic producers of silicon metal in

---

[2] Globe also alleges that Defendant Ricardo A. Vicintin, Rima's CEO, and Defendant Braulio M. Lage, Polymet's CEO, were parties to this scheme.  (*See* Am. Compl. ¶ 33.)

2002 (and has been the sole such producer since 2005).  (*See* Am. Compl. ¶ 33.)  What is more, according to the complaint, Rima has allegedly used the ill-gotten profits that it reaped after the lifting of the antidumping order to fund the construction of a silicon metal production facility in Mississippi, for which Polymet will be the exclusive distributor. (*See id.* ¶ 46.)[3]  And in securing construction permits for the new plant, Defendants allegedly lied to the Mississippi Department of Environmental Quality about the project's production limits and impact on air quality.  (*See id.*)

Globe asserts that the creation of this facility and the deception of the Mississippi state agency were parts of the same wide-ranging scheme among the defendants.  (*See id.* ¶¶ 46, 49.)  Globe also alleges that it only learned of this scheme in 2014, when news reports about the new Mississippi plant were published, identifying both Rima and Polymet personnel as the project's leaders.  (*See id.* ¶ 57.)  According to Globe, Rima's actions have done "significant harm" to Globe's business interests, insofar as they have resulted in lost sales, lost revenue, and lost disbursements of antidumping duties. (*See id.* ¶ 58.)[4]

Globe filed an Amended Complaint in this matter on April 21, 2015.  (*See* Am. Compl.)  It contains nine claims, including four counts under the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, two counts

---

[3] Defendant Mississippi Silicon LLC ("MS Silicon") is allegedly the company in charge of the construction of Rima's new plant.  (*See* Am. Compl. ¶ 46.)  The complaint states that MS Silicon is a joint venture that is majority owned by Defendant Rima Holding USA, Inc.—a company that "Rima and/or Vicintin" allegedly owns—and that it was created "as a vehicle to carry out their illegal schemes."  (*Id.*)

[4] From 2000 through 2006, the U.S. government distributed all the antidumping and countervailing duties that it collected from foreign producers to domestic silicon metal producers.  (*See* Am. Compl. ¶ 24.)  Congress repealed the law prescribing this policy in February 2006, but distributions were made for all duties collected through September 30, 2007.  (*See id.* ¶ 25.)

of tortious interference under common law, one count of civil conspiracy, and one count of unjust enrichment.  (*See id.* at 20–39.)  As for the requested relief, Globe is seeking a declaratory judgment; a permanent injunction against the operation of the Mississippi plant; payment of all the profits that Rima made from U.S. sales of silicon metal after the revocation of the antidumping order; compensatory, actual, and punitive damages; and attorney's fees.  (*See id.* at 39–40.)

Defendants filed the instant motion to dismiss on May 5, 2015.  (*See* Defs.' Mot. to Dismiss, ECF No. 17.)  They contend that Globe's complaint must be dismissed for three separate reasons.  First, they argue that this Court lacks personal jurisdiction over the defendants because Rima's communications with the Commerce Department are the sole contacts that any of the defendants has had with the District of Columbia, and under the "government contacts" doctrine, those contacts cannot be the basis for asserting personal jurisdiction.  (*See id.* at 17–25.)  Second, Defendants claim that the applicable statute of limitations bars Globe's claims, because Globe knew or should have known about its alleged injuries well before the 2014 news reports.  (*See id.* at 25–29.)  Third, and finally, Defendants argue that the complaint fails to state a claim as to each of its asserted causes of action.  (*See id.* at 29–49.)

The Court held a hearing on Defendants' motion on February 25, 2016, and took the motion under advisement.

## II.   APPLICABLE LEGAL STANDARDS

Personal jurisdiction over a non-resident defendant "may take the form of general or specific jurisdiction."  *App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 326 (D.D.C. 2015).  General personal jurisdiction requires the non-resident defendant to

maintain "continuous and systematic contacts within the District of Columbia," *Forras v. Rauf*, 812 F.3d 1102, 1106 n.5 (D.C. Cir 2016), and it permits a plaintiff to bring any and all legal claims against the defendant in the District of Columbia courts, *see Williams v. Romarm, SA*, 756 F.3d 777, 783 n.3 (D.C. Cir. 2014).   By contrast, specific personal jurisdiction "exists where [the particular] claim arises out of the non-resident defendant's contacts with the forum," as specified in the District of Columbia's long-arm statute, *App Dynamic*, 87 F. Supp. 3d at 326, and only to the extent that the exercise of such jurisdiction would not offend due process, *Forras*, 812 F.3d at 1106. The D.C. long-arm statute provides, in relevant part:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> > (1) transacting any business in the District of Columbia; [or] . . .
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia . . .

D.C. Code § 13-423(a).

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move to dismiss a lawsuit filed against him in federal court if the court lacks personal jurisdiction over him.  *App Dynamic*, 87 F. Supp. 3d at 326.  In response to such a motion, Plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over each defendant, *see Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990), which is usually accomplished by alleging specific acts that connect each defendant with the forum, *see Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  The general rule is that a plaintiff must make a prima facie showing of pertinent jurisdictional facts; bare

allegations are insufficient. *See Second Amendment Found.*, 274 F.3d at 524. And the court "has considerable procedural leeway in choosing a methodology for deciding [such a] motion," *App Dynamic*, 87 F. Supp. 3d at 326 (quoting Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1351 (3d ed. 2004) (internal quotation marks omitted)); it "may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing," *id.* However, any discrepancies regarding such facts must be resolved in favor of the plaintiff. *See Crane*, 894 F.2d at 456.

For a court to exercise personal jurisdiction over non-resident co-conspirators under the so-called "conspiracy theory" of jurisdiction, the plaintiff must allege "(1) the existence of a civil conspiracy . . . , (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1096 (D.C. Cir. 2008) (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 n. 4 (D.D.C. 2006)) (internal quotation marks omitted).

## III. ANALYSIS

Defendants have put forward three alternative grounds for dismissal, but this Court's analysis begins and ends with the jurisdictional objection. *See Forras*, 812 F.3d at 1105 ("Ordinarily, determining jurisdiction is a federal court's first order of business," because "[w]ithout jurisdiction, the court cannot proceed at all in any cause."). Defendants maintain that personal jurisdiction is lacking with respect to Rima and all of the co-defendants, but Globe argues that this Court has personal jurisdiction over Rima because of its "purposeful transaction of business" in the District; namely,

its contacts with the Commerce Department to seek reconsideration of the 1991 antidumping order. (Am. Compl. ¶ 11; *see also id.* (asserting that Rima's "multiple fraudulent requests submitted to the U.S. Department of Commerce in this District seeking review and revocation of the 1991 antidumping order" provide a basis for this Court's exercise of personal jurisdiction over that defendant in this case).) Furthermore, Globe insists that this Court has personal jurisdiction over Polymet, Vicintin, Lage, Rima Holding, and MS Silicon because they are alleged co-conspirators with respect to Rima's fraudulent inducement of the revocation of the antidumping order, as well as its subsequent diversion of the ill-gotten gains into the construction and operation of the Mississippi plant, and "a substantial part of the tortious conduct giving rise to Globe's claims"—*i.e.*, the allegedly fraudulent inducement of the Commerce Department to revoke the antidumping order—"occurred in [the District]." (*Id.*)

In response to Defendants' argument that the Court must apply the "government contacts" doctrine and thereby decline to exercise personal jurisdiction on the basis of Rima's contacts with the government, Globe points out that the D.C. courts have also recognized a narrow *exception* to the government contacts doctrine, which applies where the plaintiff alleges that the defendant fraudulently petitioned the government and induced unwarranted government action against the plaintiff. *See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.* (*Companhia III*), 35 A.3d 1127, 1130 (D.C. 2012). Thus, the key issue for this Court to decide for the purpose of resolving the personal jurisdiction challenge is the scope of *Companhia*'s "fraud exception," and whether or not it embraces Globe's claims. For the reasons

explained below, this Court concludes that the "fraud exception" is not currently as broad as Globe would like it to be, and that there is no other basis in law or fact for this Court to assert personal jurisdiction over any of the defendants in this action. Consequently, because this Court lacks personal jurisdiction over these defendants, Defendants' motion must be granted, and Globe's complaint must be dismissed.

**A.   *Companhia*'s Fraud Exception To The Government Contacts Doctrine Applies When A Plaintiff Alleges That A Defendant Has Fraudulently Induced Unwarranted Government Action Against The Plaintiff**

The District of Columbia Court of Appeals has long interpreted the provision of the D.C. long-arm statute that authorizes jurisdiction over out-of-state defendants who "transact[] any business in the District of Columbia" or "caus[e] tortious injury in the District of Columbia," D.C. Code § 13-423(a), to pertain to acts that occur in this forum *other than* those arising out of a defendant's interactions with the federal government. *See Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (explaining that, under the "government contacts" doctrine, "entry into the District of Columbia by nonresidents for the purpose of contacting federal government agencies is not a basis for the assertion of in personam jurisdiction"). This exception serves at least two purposes: to avoid "convert[ing] the District of Columbia into a national judicial forum," and to safeguard "free public participation in government." *Id.* Thus, it is clear that based on the traditional application of this doctrine, Rima's communication with the Commerce Department—which is the only alleged business or tort that Rima or any of its alleged co-conspirators has engaged in within the District of Columbia—would be categorically "excluded from the jurisdictional calculus." *Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (internal quotation marks and citation omitted). However, the D.C. courts have declined to apply

10

the government contacts doctrine where the plaintiff alleges that the defendant fraudulently petitioned the government and induced unwarranted government action against the plaintiff.  *See Companhia III*, 35 A.3d at 1130.  And the *Companhia* case not only featured some of the same parties who are before the Court at present, it also arose in factual circumstances that are in some ways similar to those presented in the instant matter.

In *Companhia*, certain Brazilian producers of ferrosilicon (including, initially, Rima) brought a complaint in the United States District Court for the District of Columbia against various American ferrosilicon producers (including Globe).[5]  The plaintiffs alleged that the defendants had submitted fraudulent petitions to the U.S. International Trade Commission (ITC), and that those petitions had led the agency to impose import duties on the plaintiffs' products.  *See Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.* (*Companhia I*), 698 F. Supp. 2d 109, 114–16 (D.D.C. 2010).  After the duties were imposed in 1989, several of the defendants were convicted of illegal price fixing in 1993, which prompted the ITC to reconsider its original decision to impose duties on the plaintiffs; it lifted the duties in 1999.  *See id.* at 116.  The plaintiffs' complaint claimed that the defendants had engaged in a conspiracy to defraud the ITC that violated both RICO and the Sherman Antitrust Act, and sought damages for the financial losses they allegedly had suffered as a result of having to pay the fraudulently imposed duties for seven years.  *See id.* at 114–16.  Notably, none of the defendants were based in the District of Columbia or

---

[5] Rima was originally one of the plaintiffs in the *Companhia* case, but voluntarily dismissed its claim before the district court issued its ruling.  *See Companhia I*, 698 F. Supp. 2d at 114 n.3.

conducted any business here, *see id.* at 117, and the district court ultimately dismissed the case for lack of jurisdiction on the ground that "[t]he government contacts doctrine bars Plaintiffs from relying on Defendants' participation in ITC proceedings as a basis for personal jurisdiction." *Id.* at 119. The D.C. Circuit examined the issue on appeal, and concluded that "the scope of the government contacts exception is genuinely uncertain." *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.* (*Companhia II*), 640 F.3d 369, 373 (D.C. Cir. 2011). As a result, the circuit court panel certified the following question to the D.C. Court of Appeals:

> Under District of Columbia law, does a petition sent to a federal government agency in the District provide a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff?

*Id.*

The D.C. Court of Appeals responded, 'yes.' *See Companhia III*, 35 A.3d at 1130. That court reaffirmed that "the unique concerns underlying the government contacts principle are as compelling today as they were" when the doctrine was first announced. *Id.* at 1132. However, it noted that "individuals who enter the District of Columbia to fraudulently induce unwarranted government action against others" should not be able "to avoid defending their actions in this jurisdiction by cloaking themselves in the government contacts doctrine." *Id.* at 1133. The court also cautioned that courts applying this fraud exception must "strict[ly] adhere[] to the standards of pleading" in order to prevent opening the D.C. courts to "an unrelenting wave of litigation." *See id.* at 1134 (internal quotation marks and citation omitted). It concluded by emphasizing the narrow scope of its ruling: it explained that the opinion "addressed only the [certified] legal question" of "whether, under District of Columbia law, a petition

submitted by a nonresident to a federal government agency in the District provides a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff." *Id.* at 1135.

On remand, the federal district court determined that it had personal jurisdiction over the defendants, relying on the fact that, when the ITC reversed its original decision to impose tariffs on the plaintiffs, the agency itself had stated that the defendants' petition to the agency was fraudulent, and it was also material to the agency's decision to take action against the plaintiffs. *See Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.* (*Companhia IV*), 887 F. Supp. 2d 9, 16–17 (D.D.C. 2012) ("Under the unique circumstances of this case where the ITC has determined that it had been defrauded, this Court can rely on the ITC's findings as a basis for exercising personal jurisdiction.").

Thus, the *Companhia* cases for the first time established a limited exception to the government contacts doctrine: when a plaintiff alleges that a defendant's petition to a federal agency in the District of Columbia fraudulently induced unwarranted government action against the plaintiff, that petition provides a basis for personal jurisdiction in a District of Columbia court. *See Companhia IV*, 887 F. Supp. 2d at 14–15.

**B.     The Fraud Exception Does Not Apply In This Case Because Globe Does Not Allege That Rima Fraudulently Induced Government Action Against Globe**

The question before this Court is whether Rima's allegedly fraudulent representations to the Commerce Department at various times between 1993 and 2002 fall within the *Companhia* fraud exception.  If so, then they can form the basis for this

Court's exercise of personal jurisdiction over Rima; if not, then Plaintiff must allege some other jurisdictional hook.  As explained below, this Court concludes that Defendants' contacts fall outside the narrow fraud exception for two related reasons: first, because under the fraud exception, the defendant's alleged fraudulent contact must have induced unwarranted government action against the plaintiff, and second, because Globe has not made a persuasive argument that any such government action occurred against it under the circumstances presented here.

On the first point, the D.C. Court of Appeals in *Companhia* emphasized that "the mere filing of a fraudulent petition" was not enough to create jurisdiction; the petition must provoke government action *against* the plaintiff.  *App Dynamic*, 87 F. Supp. 3d at 328; *see Companhia III*, 35 A.3d at 1134 ("[W]e hold that a person who uses the government as an instrumentality of fraud, *and thereby causes unwarranted government action against another*, forfeits the protection of the government contacts exception." (citation omitted) (emphasis added)).  Other District of Columbia courts, too, have recognized that government action against the plaintiff is necessary to trigger the exception that *Companhia* establishes; to hold otherwise would impermissibly expand the fraud exception and threaten to undermine the longstanding government contacts doctrine.  *See App Dynamic*, 87 F. Supp. 3d at 328.

Globe acknowledges this limitation, but claims that its factual situation is nevertheless on all fours with the *Companhia* case.  This is because, according to Globe, it suffered collateral damage (lost sales and customers) from the government's action taken toward Rima as a result of the alleged fraud (i.e., the Commerce Department's fraudulently induced revocation of the antidumping order).  As Globe

14

sees it, there have, in fact, been four different impacts on Globe arising from the alleged fraud that should be deemed to qualify as "unwarranted government action against Globe": (1) Globe was allegedly a "party" to the administrative reviews of the antidumping order that the Commerce Department undertook, and thus purportedly suffered a loss when the agency determined that the antidumping order should be revoked in 2002; (2) Globe was harmed economically when certain antidumping duties were refunded to its competitors as a result of the revocation of the order; (3) Globe missed out on collecting duty-related sums that the government would have distributed to it had the order remained in place; and (4) the revocation of the antidumping order itself purportedly exposed Globe to "import injury."  (*See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 18, at 27.)

In this Court's view, none of these examples of how the Commerce Department's revocation of the antidumping order might be construed as an action against Globe is persuasive.  First of all, neither the complaint nor the record establishes that Globe was a party to the administrative review of Rima's antidumping order in any meaningful sense or that the Commerce Department's reconsideration of an antidumping order is tantamount to an adversarial proceeding in which there are necessarily 'winners' and 'losers.'[6]  To the contrary, as Globe's own allegations make clear, the administrative review process with respect to an existing antidumping order involves, *inter alia*, an examination of U.S. Customs' entries regarding the merchandise that has been subjected to the order under review (here, Rima's silicon metal products) to determine whether

---

[6] Indeed, the assertion that Globe was a party to the administrative review of the antidumping order appears nowhere in the complaint, and besides the one reference to the term "party" in Globe's opposition brief, there appears to be no other mention of this dynamic in the record evidence.

dumping is still occurring (*see* Compl. ¶ 29), and in this regard, the result of that review seems best characterized as an action that is solely for, or against, *Rima*, not an action against Globe.  Moreover, nothing in the instant record indicates that Globe's presence as an interested party changed the fundamental nature of the agency's review or its outcome in any way.

Second, while it may be tempting to perceive the highly competitive silicon metal industry as a zero-sum game, in this Court's view, a government decision to provide a refund to one competitor, or to rescind an order that previously required that competitor to pay duties, is simply and solely government action *toward* that competitor (here, Rima) and cannot be fairly characterized as an action "against" another, despite the fact that the indirect effect will be to benefit one competitor at the theoretical expense of the others.   Put another way, a refund of duties or a rescission of the antidumping order that favors Rima might well have bolstered that company's market position, thereby indirectly harming Globe's business interests, but that does not transform government actions that are clearly aimed at Rima into actions against Globe for present purposes.  Third, and finally, while the loss of hypothetical duties could potentially qualify as a direct harm (*see* Pl.'s Opp'n at 27), it is not a government action; it is, if anything, the *absence* of government action—i.e., the government's *failure* to collect and redistribute duties—and, in any event, the impact of this inaction cannot reasonably be viewed as "against" Globe in particular, since that same harm would occur with respect to all domestic silicon metal producers.

In short, this Court squarely rejects Globe's contention that the mere fact that the Commerce Department's allegedly unwarranted lifting of its revocation order had

consequences for Globe means that it was a "government action against" Globe for the purpose of the *Companhia* doctrine.  Courts in this jurisdiction have consistently refused to extend personal jurisdiction under the fraud exception where the fraudulent contact did not result in the government agency taking any actions against the plaintiff. *See Shaheen v. Smith*, 994 F. Supp. 2d 77, 86 (D.D.C. 2013) (finding fraud exception inapplicable where "no government agency took action against the plaintiff" as a result of the defendant's allegedly fraudulent filings); *Morgan v. Richmond Sch. of Health & Tech., Inc.*, 857 F. Supp. 2d 104, 109 (D.D.C. 2012) (declining to apply the fraud exception where there was "no allegation that [Defendant] employed the allegedly fraudulent statements to coax the government into action *against* any Plaintiff" (emphasis in original)).  And this is as it should be, because to hold otherwise would expand the "very narrow" fraud exception, *Morgan*, 857 F. Supp. 2d at 109; *accord App Dynamic*, 87 F. Supp. 3d at 328, beyond its logical boundaries.  That is, under Globe's interpretation, any plaintiff engaged in business anywhere in the world could find in D.C. a forum to file suit against its competitors, if those competitors have allegedly fraudulently induced a government agency into making a regulatory determination that is beneficial to them.  Because virtually every action by a federal government agency will have ripple effects in some economic market, such regulatory action would always arguably impact the other competitor's bottom line.  Therefore, to consider the *indirect* impact of an agency decision to be sufficient to permit the filing of an action in D.C. against the defendant who fraudulently lobbied for the change would threaten to transform this district into "a national judicial forum," *Envtl. Research*, 355 A.2d at 813, and thereby effectively eviscerate the government contacts doctrine.

Notably, this Court is not the only one to express reluctance about interpreting the fraud exception that broadly.  In *App Dynamic ehf v. Vignisson*, an Icelandic company (App Dynamic) brought suit in the District of Columbia against a former employee and Icelandic citizen (Vignisson), who was living in Sweden.  *See* 87 F. Supp. 3d at 324.  App Dynamic argued that Vignisson had filed a fraudulent copyright registration with the U.S. Copyright Office, then attempted to enforce that copyright against App Dynamic in a Swedish court.  *See id.* at 325.  App Dynamic claimed that the U.S. District Court for the District of Columbia had personal jurisdiction over Vignisson on the basis of the *Companhia* fraud exception, because Vignisson "made multiple misrepresentations to the Copyright Office with the goal of ensuring that the Copyright Office issued a copyright registration to Defendant in a form that Defendant could use against Plaintiff."  *Id.* at 328 (internal quotation marks and citation omitted).  But the court concluded that this was "not enough" to bypass the government contacts limitation because the plaintiff had made no allegation "that the *U.S. Copyright Office* took any unwarranted action *against Plaintiff*."  *Id.* at 329 (emphasis in original).  This was the "fatal flaw" in the plaintiff's argument for personal jurisdiction, the court explained, because "[t]he fraud exception is limited to petitions to a federal government agency that fraudulently induce unwarranted government action against the plaintiff[,]" *id.* at 328–29 (emphasis omitted) (internal quotation marks and citation omitted); if the plaintiff had instead asserted that the Copyright Office had imposed a duty on Plaintiff's product or forced it to stop selling its product, the situation "might be . . . different[.]"  *Id.*

It is clear to this Court that the instant case is much closer to the facts of *App Dynamic* than to those in *Companhia*.  That is, in *Companhia*, the ITC imposed tariffs directly on the plaintiff's products—a clear government action against the plaintiffs—whereas, in the instant case, the Commerce Department took no direct action against Globe.  Instead, just as in *App Dynamic*, the Commerce Department has merely conferred a benefit on the defendant that has had negative consequences for the plaintiff as a result of subsequent activities (in this case, business competition).  In this Court's view, that is not enough.[7]

### C.   There Is No Other Basis for Exercising Personal Jurisdiction Over Any of the Defendants

Globe's fallback argument is that, even if Rima is not subject to personal jurisdiction under the long-arm statute, two other theories of jurisdiction can bring Defendants within the Court's reach.  (*See* Pl.'s Opp'n at 28–31.)  First, Globe contends

---

[7] During the motion hearing, Globe's counsel seemed to advance a new argument that attempted to distinguish *App Dynamic* on the basis of the fundamental dissimilarity between the antidumping regulatory scheme and the copyright statutory schemes and their legal consequences.  This argument does not appear in any of Globe's filings with the Court.  Nevertheless, in considering the contention as it was orally argued, the Court is unpersuaded.  A copyright is a property right granted by the U.S. government that confers on the holder a legal monopoly over the production and distribution of the copyrighted work.  *See Goldstein v. California*, 412 U.S. 546, 555 (1973) ("Congress may grant to authors the exclusive right to the fruits of their respective works. An author who possesses an unlimited copyright may preclude others from copying his creation for commercial purposes without permission.").  Holding a copyright undoubtedly confers a significant competitive advantage over the holder's rivals, as the defendant in *App Dynamic* demonstrated when he attempted to wield his ill-gotten copyright against his former employer.  *See* 87 F. Supp. 3d at 325.  Nevertheless, the district court concluded that the U.S. Copyright Office's conferral of this significant benefit to the defendant did not constitute an unwarranted government action *against the plaintiff*, even though that conferral indirectly caused negative consequences for the plaintiff.  Likewise, the Commerce Department's revocation of the antidumping order undoubtedly conferred a market advantage onto Rima (or at least removed a market disadvantage), allowing it to sell its silicon metal at lower prices in the U.S. market and thereby attract more customers and make more sales.  This conferred advantage may well have had negative consequences for Globe and other domestic silicon metal producers.  But those second-hand effects do not constitute *government action against Globe*, and the *Companhia* court was quite clear that its analysis was limited to "fraudulently induced unwarranted government action against the plaintiff."  *Companhia III*, 35 A.3d at 1135.

that Rima is "subject to jurisdiction under RICO's personal jurisdiction provision," 18 U.S.C. § 1965(a), which provides that any civil RICO action "may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." (*See* Pl.'s Opp'n at 28.)  But the D.C. Circuit has explained that § 1965(a) does not obviate the need to establish that at least one defendant has the requisite minimum contacts with the forum.  *See FC Inv. Grp.*, 529 F.3d at 1099 ("[A] civil RICO action can only be brought *in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.*"  (emphasis in original) (quoting *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (internal quotation marks omitted)).  In this case, Globe concedes that the only contact Rima has had with the district is its interactions with the Commerce Department for the purpose of getting the antidumping order lifted, which do not count as contacts for personal jurisdiction purposes due to the government contacts doctrine, as discussed above.  *See AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 82, 86–87 (D.D.C. 2004) (holding that there was no jurisdiction over the defendants under RICO because their only contacts with the District were exempt under the government contacts exception), *abrogation on other grounds recognized by Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 242 (D.D.C. 2015); *see also Alkanani*, 976 F. Supp. 2d at 25 (explaining that a non-resident defendant's government contacts are "excluded from the jurisdictional calculus").  Thus, RICO does not provide an independent basis for personal jurisdiction over Rima.

Globe's second contention is similarly unavailing.  Globe argues that this Court has personal jurisdiction over the remaining defendants (Polymet, Vicintin, Lage, Rima Holding, and MS Silicon) because they are Rima's co-conspirators.  (*See* Pl.'s Opp'n at 28–29.)  Under the so-called "conspiracy theory" of jurisdiction, "[s]o long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004) (citation omitted).  However, it is well established that, to prevail on such a theory of personal jurisdiction, the plaintiff must allege "(1) the existence of a civil conspiracy . . . , (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, *subject to the long-arm statute*, and in furtherance of the conspiracy." *FC Inv. Grp.*, 529 F.3d at 1096 (emphasis added) (internal quotation marks and citations omitted).  Here again, the only alleged overt act that was committed by any of the co-conspirators in the District of Columbia was Rima's petition to the Commerce Department, which is not subject to the long-arm statute for the reasons discussed above.  *Cf. Companhia II*, 640 F.3d at 372–73 (refusing to accept defendants' petitions to the ITC as overt acts supporting a conspiracy theory of personal jurisdiction without first evaluating those petitions under the government contacts doctrine).  Thus, Rima's interactions with the Commerce Department cannot serve as a jurisdictional anchor that permits this Court to exercise jurisdiction over the co-conspirators.

## IV.    CONCLUSION

If *Companhia*'s requirement that there must be government action "against the plaintiff" is to have any meaning, it cannot reasonably be read to include government

21

action against another entity that happens to impact the plaintiff's relative market position, and that is the only circumstance that has been presented here.  The Court is mindful that the D.C. Court of Appeals limited itself to addressing only the specific legal question certified by the D.C. Circuit when it articulated the fraud exception in *Companhia*.  *See Companhia III*, 35 A.3d at 1135.  But its answer stressed the fact that the plaintiff in that case was the *target* of the fraudulently induced government action, *see id.* at 1134–35, which makes eminent sense given that the government contacts doctrine is designed to prevent the District of Columbia courts from being flooded by cases with only tangential connections to the District, and the fraud exception is the one conceivable circumstance in which an aggrieved plaintiff should arguably be permitted to haul an out-of-state defendant into the District of Columbia's courts to complain that the defendant fraudulently utilized its contacts with the government to visit direct harm upon the plaintiff.  Perhaps in a future opinion the D.C. Court of Appeals will see fit to expand the fraud exception beyond these narrow contours.  But, for now, this Court concludes that because Globe does not allege "that the [Commerce Department] took any unwarranted action *against [it]*," *App Dynamic*, 87 F. Supp. 3d at 329 (emphasis in original), the fraud exception is not triggered in this case, and the government contacts doctrine precludes this Court's exercise of jurisdiction under the D.C. long-arm statute. In that Globe has also failed to provide any other basis for this Court to find that it has personal jurisdiction over Rima and the other alleged co-conspirators, the Court finds

that it lacks personal jurisdiction over any of the defendants, and, consequently, as set forth in the accompanying order, Defendants' motion to dismiss Globe's complaint must be **GRANTED**.


DATE:  March 31, 2016                    *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States District Judge